IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES MILLER, AIS # 160788,          :

    Plaintiff,                                       :

vs.                                                        :        CIVIL ACTION 12-0474-WS-C

BALDWIN COUNTY, *et al.*,              :

    Defendants.                                   :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful consideration, it is recommended that the claims for compensatory and punitive damages be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that the claims for injunctive and declaratory relief be dismissed as moot. It is further recommended that the claim for nominal damages proceed in this action once plaintiff has filed an amended complaint that complies with the pleading instructions contained herein. However, if plaintiff chooses not to pursue an action involving only nominal damages, his complaint should be dismissed in its entirety.[1]

**I. Complaint. (Doc. 1).**

---

[1] Alternatively, if it is determined that a liberal reading of the amended complaint does not reveal a claim for nominal damages, the entire complaint should be dismissed without prejudice.

Plaintiff sues Baldwin County, Alabama, Sheriff Mack, Major Dale Byrne, Mail Clerk Gaines, Captain Bennett, Sergeant Klos, Nurse Wasdin, and Nurse Kurtz for the manner in which his mail was handled while he was a pretrial detainee at the Baldwin County Corrections Center ("jail"). (Doc. 1 at 8). The allegations concerning the claims against these defendants are described below.

After plaintiff received the form needed to obtain his adoption records from the Alabama Department of Health Center for Health and Statistics ("Department"), completed it, and sent it in, more than a month elapsed without a response from the Department. (*Id.* at 8). On December 10, 2012, plaintiff wrote the Department inquiring about the status of his request for his adoption papers. (*Id.* at 9). Plaintiff received a letter from the Department informing him that the requested documents were sent to him on November 18, 2010. (*Id.*). Thereupon, he sent a form to the jail's mailroom inquiring about why he did not receive his adoption papers when the Department had sent them to the correct address. (*Id.*). Because he received no response, he filed a grievance on or about December 20, 2010, which was ignored. (*Id.*). On December 27, 2010, plaintiff wrote defendant Klos about his situation. (*Id.*). She visited him the next day, and he explained the situation. (*Id.*). She said that she would look into it for plaintiff. (*Id.*).

Defendant Klos returned and told plaintiff the mailroom had not received "any such mail." (*Id.*). Plaintiff showed defendant Klos the Department's letter showing that a letter was sent to him on November 18, 2010. (*Id.*). She made a copy and called the director of the Department, who said that another copy would be mailed on December 29, 2010. (*Id.* at 10). On January 4, 2011, defendant Klos personally delivered the letter containing a copy of the adoption papers to plaintiff. (*Id.*). Defendant Klos told plaintiff that his papers were not considered legal mail because legal mail was not written on the envelope; whereas, he argues that they are legal

2

mail because the envelope contained papers signed by a judge and it came from a state office. (*Id.*).

On January 5, 2011, defendant Nurse Kurtz delivered the copy of plaintiff's adoption papers that were received at the jail in November ("first documents") to plaintiff at pill call. (*Id.*). Plaintiff wrote a request to "medical" asking why his adoption papers ended up on the pill cart and why he received them 48 days later. (*Id.*). The next day defendant Kurtz told plaintiff that the first documents appeared on the desk of the head nurse, defendant Wasdin, who placed them on the cart for delivery to plaintiff. (*Id.*).

Plaintiff wrote to defendant Klos informing her that he had belatedly received the first documents that the Department sent in addition to the documents that she re-ordered, and wanted to know why he received the first documents from the pill call nurse. (*Id.* at 11). On January 6, 2011, defendant Kos told plaintiff the reason he received the first documents late was the post office must have lost them. (*Id.*). Plaintiff maintains that the postmark and the Department show the documents arriving on or about November 19, 2011, and that he told defendant Klos that his First Amendment rights had been violated. (*Id.*). Defendant Klos then told him that the "mail had in fact been delivered on time and that he got it the same day the jail did." (*Id.*). As a result of the deliberate actions of defendants Klos, Gaines, Wasdin, and Kurtz, plaintiff "suffered stress, anxiety, and depression from having to jump through the proverbial hoops of getting his adoption documents and the fact that said defendants knew who plaintiff's parents were before he did which was confidential as stamped on said documents." (*Id.*).

In regard to this situation, plaintiff filed grievances and sought representation in this matter from an attorney, Mr. Coley, Jr., who had been referred by the Mobile Bar Association. (*Id.* at 11-12). All of the mail sent to plaintiff from Mr. Coley's office was opened and read

outside of plaintiff's presence because it was treated as personal mail, not legal mail. (*Id.* at 12). Plaintiff filed a grievance about this on March 9, 2011. (*Id.*). The next day, defendants Gaines and Byrne responded to plaintiff admitting that the opening had occurred and informing him that it would never happen again. (*Id.*). However, defendants opened about ten more pieces of legal mail and read it, outside of his presence, and did not have him sign for them in the legal mail log. (*Id.*).

Furthermore, the mail plaintiff received from the ACLU and Alabama State Bar Association was not treated as legal mail. (*Id.* at 12-13). But his mail from the Mobile Bar Association was treated as legal mail. (*Id.*). Thus, he "was so upset, stressed out [and his] anxiety level was so high because of the treatment of his mail [which caused] his insulin dosage [and] blood pressure dosage had to be raised twice[,] thus endangering his health [and] well being." (*Id.*).

In addition, plaintiff claims that defendants discriminated against him because they refused to let him receive a law book through the mail; whereas, later another inmate was allowed to receive the same law book through the mail. (*Id.*). Then, defendants Gaines, Klos, Wasdin, and Kurtz violated his First Amendment rights when they opened and read his legal mail, (*id.* at 13, 17), which "caused him to suffer anxiety, depression, and anger[.]" (*Id.* at 17). And it was the "policy of [defendants] Mack[, Bennett, and] Byrne to allow plaintiff's [First] Amendment rights to be violated after learning of it through the plaintiff's grievances[,]" and they failed to train their subordinates in the proper procedures. (*Id.* at 13, 17). Defendants Mack and/or Byrne were also deliberately indifferent to plaintiff's legal mail situation because they are the final policy maker and are responsible for their subordinates' actions. (*Id.*). Moreover, defendant Baldwin County is sued because it has allowed defendants Mack and/or

Byrne to continuously violate plaintiff's First and Fourteenth Amendment rights; whereas, it is responsible for the actions of its subordinates.  (*Id.* at 13-14, 17).  In conclusion, plaintiff maintains that "all defendants" violated his "First and Fourteenth Amendment right by opening and reading [his] legal mail outside of [his] presence . . . and [he] never signed for most of his legal mail . . . ."  (*Id.*).

For relief plaintiff requests declaratory relief, compensatory damages of $30,000 from each defendant, punitive damages of $10,000 from each defendant, "any other relief the court deems appropriate," and injunctive and declaratory relief.  (*Id.* at 7, 18).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B).  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact."  *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).[2]  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, *id.* at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[2]The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke v. Williams* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied*, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B).  *Id.* at 1348-49.

liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S.Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920-21, 166 L.Ed.2d 798 (2007).  When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 791, 710 (11th Cir. 2010) (relying on *Iqbal*, 566 U.S. 662, 129 S.Ct. 1937).  Furthermore, the court treats as true the complaint's factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal*, 566 U.S. at 681, 129 S.Ct. at 1951; *see Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003) ("In reviewing a complaint [under Rule 12(b)(6)], we accept all well-pleaded factual allegations as true and construe the facts in the light most favorable to the plaintiff."); *Smith v. Knox County Jail*, 686 F.3d 1037, 1039 (7th Cir. 2012) (taking as true the complaint's allegations which had been dismissed pursuant to 28 U.S.C. §1915A).  In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil

Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.), *cert. denied*, 493 U.S. 863 (1989).

**III.  Discussion.**

    **A.  Applicability of 42 U.S.C. § 1997e(e).**

"In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA")." *Harris v. Garner*, 216 F.3d 970, 971 (11th Cir.), *cert. denied*, 532 U.S. 1065 (2001).  Included in the PLRA is 42 U.S.C. § 1997e(e), which provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  For the purposes of this section, a prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997(h).  Plaintiff identifies himself as a pretrial detainee when his claims arose, and his pleadings indicate when he filed this action he was in the custody of the Alabama Department of Corrections.  (Doc. 1).  Thus, the Court concludes that this section applies to plaintiff in regard to this action.

Furthermore, section 1997e(e) is "[r]ead as a limitation on recovery only[.]"  *Harris v. Garner*, 190 F.3d 1279, 1288 (11th Cir. 1999) (finding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation"), *opinion vacated by* 197 F.3d 1059, *opinion reinstated in part by* 216 F.3d 970 (11th Cir. 2000).  By enacting § 1997e(e), Congress chose to "preclude[ ] some actions for money damages[,]" *Harris*, 190 F.3d at 1283,

7

and "to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief[.]" *Id.* at 1289. This section "applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir.), *cert. denied*, 540 U.S. 1112 (2004). The statute's clear and broad language encompasses all claims, including constitutional claims, and provides for no exceptions. *Al-Amin v. Smith*, 637 F.3d 1192, 1197 (11th Cir. 2011). Moreover, no distinction is made between "constitutional claims frequently accompanied by physical injury (e.g., Eighth Amendment violations) and those rarely accompanied by physical injury (e.g., First Amendment violations)[;]" all constitutional claims are treated equally. *Id.*

In the present action, plaintiff requested, *inter alia,* compensatory and punitive damages. At the same time the allegations in his complaint are absent of a physical injury that he suffered as a result of defendants' actions. Whereas, the language of 42 U.S.C. § 1997e(e) states that to recover damages for a "mental or emotional injury suffered while in custody" there must be a "prior" physical injury. *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) ("Both the explicit requirement of § 1997e(e) that the physical injury be 'prior,' and the statutory purpose of discouraging frivolous suits, preclude reliance on the somatic manifestations of emotional distress[.]"). Allegations of "physical manifestations of mental or emotional injuries" do not satisfy the physical injury requirement because the physical injury is required to occur prior to the sustaining of the mental or emotional injury. *Hughes v. Colorado Dept. of Corrections,* 594 F. Supp.2d 1226, 1238-39 (D. Colo. 2009) (collecting cases). Courts have found that physical manifestations of the emotional or mental injury are not the prior injury required to satisfy the statute. *Id.* at 1238 ("dizziness, chest pain, nausea, increased heart rate, headaches, and other similar symptoms[]" are manifestations of depression and anxiety that are

derivative of the mental and emotional injuries that the prisoner may have suffered and are not the prior physical injury necessary to prevent the application of § 1997e(e)); *Minifield v. Butikofer,* 298 F.Supp.2d 900, 905 (N.D. Cal. 2004) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury."); *accord Hicks v. Copeland,* No. 2:07-CV-507-WKW, 2008 WL 4671777, at * 3 (M.D. Ala. Oct. 21, 2008) (Statements that the prisoner was a diabetic, chronic care patient who had pain in his body all the time and difficulty walking were merely a description of his disease's symptoms, and were not a prior physical injury connected to the denial of his diabetic lunch and to his hearing of foul language.).

Plaintiff's few allegations regarding his physical condition are that he was "was so upset, stressed out [and his] anxiety level was so high because of the treatment of his mail [that] his insulin dosage [and] blood pressure dosage had to be raised twice[,] thus endangering his health [and] well being" (*id*. at 13), and "caused him to suffer anxiety, depression, and anger[.]" (*Id.* at 17). These allegations show that as result of the manner in which his mail was handled plaintiff suffered stress, anxiety, depression, anger, and being upset, which are emotional and mental injuries. No physical injury, however, is alleged as having caused these emotional or mental injuries. In the absence of physical injury having caused the emotional and physical injuries, 42 U.S.C. § 1997e(e) bars plaintiff from recovering compensatory or punitive damages. *See Al-Amin,* 637 F.3d at 1196 (finding that in the absence of allegations of physical and emotional injuries the prisoner was barred by 42 U.S.C. §1997e(e) from recovering compensatory and punitive damages for his claim that his legal mail was being opened outside of his presence); *Thomspon v. Adamason*, 247 F. App'x 178 (11th Cir. 2007) (unpublished) (affirming the district court's § 1997e(e) dismissal of the prisoner's claim for withholding the "Self-Help Litigation

9

Manual" that he had ordered through the mail because no physical injury was alleged and no injury was advanced on appeal to support his simple argument that the district court erred).[3]

The increase in insulin and in blood pressure medicine which plaintiff mentions is alleged to be the result of plaintiff's emotional and mental injuries. Liberally construed, the increase-in-medication allegation is considered plaintiff's way of stating that his pre-existing conditions or diseases for which he was taking medication, were aggravated when he experienced emotional and mental distress. Thus, the aggravation cannot be deemed to be an injury that occurred prior to plaintiff suffering emotional and mental injuries.

**B. Mootness of Injunctive and Declaratory Claims.**

Having determined that plaintiff is not entitled to compensatory and punitive damages in this action, the Court now turns to the other forms of relief that he requested. Plaintiff seeks injunctive and declaratory relief. In the absence of information clarifying the injunctive relief request, the Court finds that this request seeks to have defendants' actions stopped. For declaratory relief, plaintiff seeks to have defendants' actions declared unconstitutional. (Doc. 1 at 11).

However, "an inmate's request for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once an inmate has been transferred." *Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir.) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985), *cert. denied*, 488 U.S. 1046 (1989). In *Spears, supra*, an Alabama prison inmate complained about West Jefferson's administrative segregation's conditions of confinement. After he filed his complaint, he was transferred from West Jefferson to another facility. As a

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

consequence, the court held the inmate's claims for injunctive and declaratory relief were moot. *Id.*

Similarly, the undersigned finds that plaintiff's claims arising from the treatment of his mail are moot because he no longer incarcerated at the jail facility where he would be subject to defendants' handling of his mail. Therefore, the Court finds that plaintiff's requests for declaratory and injunctive relief are moot. *See Boxer X v. Donald,* 169 F. App'x 555, 559 (11th Cir. 2006) (finding the plaintiff's requested injunctive relief was moot because he no longer was incarcerated at the prison where the defendants worked while, *inter alia*, his claim for compensatory relief was precluded by 42 U.S.C. § 1997e(e)); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985) ("[A]n inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. . . .Past exposure to illegal conduct does not constitute a present case or controversy[.]").

### C. Nominal Damages.

In addition to the foregoing requests, plaintiff asked "for other relief this court deems appropriate and proper." (Doc. 1 at 18). This general request is in contrast to his other specific requests for relief, which include almost every type of relief available. The only form of relief that he did not request is nominal damages. Nominal damages are just what its name reflects an award of a nominal amount after the court has determined that there was a violation. *See Carey v. Piphus,* 435 U.S. 247, 266-67, 98 S.Ct. 1042, 1053-54, 55 L.Ed.2d 252 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); *Kyle v. Patterson,* 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); *see also Hughes v. Lott,* 350 F.3d 1157, 1162 (11th Cir.

2003) ("[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.").

When confronted with a general, open-ended request for relief, which does not request or preclude a claim for nominal damages, such as the present one, courts have liberally construed the request to be one for nominal damages. *Boxer X,* 169 F. App'x at 559; *Hughes,* 350 F.3d at 1162; *Frazier v. McDonough,* No. 3:07cv273/LAC/MD, 2008 WL 3050393, at *1 (N.D. Fla. Aug. 1, 2008) (unpublished). Thus, plaintiff may proceed on a claim for nominal damages in this action. Therefore, plaintiff is granted the opportunity to file an amended complaint that clearly sets forth his request for nominal damages within the time period for filing an objection to this report and recommendation (14 days after being served a copy of this Report and Recommendation).

In order to file this amended complaint, plaintiff must complete the Court's § 1983 complaint form in its entirety, (which plaintiff did not do when he filed his original complaint).[4] The allegations are to be limited to plaintiff's First Amendment claims. The defendants are those persons who are responsible for the alleged First Amendment violations. Plaintiff must clearly described how each named defendant is involved in each alleged constitutional violation, including the specific dates of the alleged unconstitutional acts. It is important that plaintiff clearly set out in detail the facts relating to each defendant because in civil rights cases, more

---

[4] Plaintiff's claims in the original complaint are contained in an eleven-page narrative attached to the complaint form. Whereas, the complaint form assists a plaintiff in filing a short and plain statement which complies with Rule 8(a) of the Federal Rules of Civil Procedure. FED.R.CIV.P. 8(a) (requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

than conclusory and vague allegations are required to state a claim. *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949; *Fullman v. Graddick*, 730 F.2d 553, 556-57 (11th Cir. 1984). In addition, plaintiffs must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of the plaintiff's constitutional rights in order to state a claim under § 1983. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986). The amended complaint must contain all of his allegations because the amended complaint will supersede the original complaint; therefore, he no longer can rely on it. *Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982). Plaintiff shall not file a memorandum of law, cite to cases or statutes, or file exhibits as evidentiary support for his amended complaint. Nor does plaintiff need to include allegations about his mental or emotional injuries connected to defendants' action because nominal damages are only awarded upon a successful showing of a violation of the Constitution.[5]

## IV. Conclusion.

Based upon the foregoing reasons, it is recommended that the claims for compensatory and punitive damages be dismissed without prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and that the claims for injunctive and declaratory relief be dismissed as moot. *See Harris v. Garner,* 216 F.3d 970, 980 (11th Cir. 2000), *cert. denied,* 532 U.S. 1065 (2001) (Dismissals of claims for monetary damages under § 1997e(e) "should be without prejudice to re-filing the claim if and when the plaintiff is released."). It is further recommended that the claim for nominal damages proceed in this action once plaintiff has filed an amended complaint that complies with the pleading instructions. However, if plaintiff chooses not to pursue an action involving only nominal damages, his complaint should be dismissed in its entirety.

---

[5] The Clerk is **DIRECTED** to send plaintiff this Court's form for a complaint under 42 U.S.C. § 1983 when the Report and Recommendation is sent to plaintiff.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this 15th day of March, 2013.

                                        s/WILLIAM E. CASSADY
                                        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.       **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.       **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  FED.R.CIV.P. 72(b)(2).